UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

FRANK THACKER,                    :
                                  :    NO. 1:04-CV-00265
        Plaintiff,                :
                                  :    **OPINION & ORDER**
                                  :
    v.                            :
                                  :
                                  :
LAWRENCE COUNTY LOCAL             :
GOVERNMENT, <u>et al</u>.,       :
                                  :
        Defendants.               :


        This matter is before the Court on the Defendants'
Motion for Summary Judgment (doc. 16), the Plaintiff's Memorandum
in Opposition to Defendants' Motion for Summary Judgment (doc. 18),
and the Defendants' Reply to Plaintiff's Memorandum in Opposing Its
Motion for Summary Judgment (doc. 19).  Plaintiff, Frank Thacker
(hereinafter "Thacker"), filed his Complaint in this matter on
April 15, 2005 alleging that the Lawrence County Sheriff's Deputies
and Lawrence County local government violated his constitutional
rights (doc. 1).  The action was brought pursuant to 42 U.S.C. §
1983 (<u>Id</u>.).  Defendants' Answered Plaintiff's Complaint (doc. 4),
and subsequently filed a Motion for Summary Judgment (doc. 16).

**FACTS**

        On July 2, 2002, Thacker was residing in Lawrence
County, Ohio with his ex-wife (doc. 18).  On that date, he
maintains a fire was set to a barn housing his horses (doc. 1).
Learning of the fire, Thacker rushed from his residence to the barn

in an attempt to save his horses (Id.).  Thacker took with him a rifle, which he loaded as he ran towards the barn (doc. 16). Thacker avers that he grabbed his gun in the event that he could not rescue his horses from the fire and instead had to shoot them (Id.).  Thacker was, at the time of the fire, not permitted to possess a firearm because a Civil Protection Order had been levied against him (Id.).  Thacker admits that this was the fourth fire that had occurred on his property in a five-week period (Id.). Thacker was upset and bothered that all of these fires had occurred (Id.).

Fortunately, Thacker was able to save his horses from the fire (Id.).  Firefighters arrived at the scene approximately five to ten minutes after Thacker let his horses out of the burning barn (Id.).  Thacker maintains he assisted said firefighters and attended to his horses (doc. 1).  However, in deposition, Thacker admits to walking around the scene with the loaded rifle (doc. 16).  The Defendants maintain Thacker was asked to put the loaded rifle down, but Thacker denies such (Id.).  It is disputed whether Thacker knew all or most of the firefighters on the scene that evening (Id.).  Thacker maintains that he did not interfere or threaten the firefighters (doc. 18).  Thacker notes that the Burlington-Fayette Fire Department incident report reads: "[Plaintiff] did not seem agitated and did not threaten firefighters or interfere with operations" (Id.).

-2-

Defendants maintain that because Thacker was visibly upset, not known by some of the firefighters, and toting a loaded rifle, the police were called (doc. 16). Defendants, R. Goodall (hereainafter "Goodall") and A. Bollinger (hereinafter "Bollinger"), both officers in the Lawrence County Sheriff's Office, were the officers who arrived on the scene (Id.). Thacker, upon the arrival of Goodall and Bollinger, was leaning against one of the fire trucks with his loaded rifle propped on his shoulder (Id.). Goodall asked Thacker who he was and why he was standing around with a loaded firearm (Id.). Subsequently, before Thacker could respond, Goodall removed the weapon from Thacker's grasp (Id.). Thacker testified in deposition that this upset him (Id.).

Thacker subsequently cursed at Goodall; Goodall requested that Thacker calm down (Id.). In Thacker's own deposition, he admits that he did not calm down, rather he continued to curse at Goodall (Id.). Thacker maintains that, at this point, Bollinger forced him to the ground (Id.). However, Bollinger and Goodall contend that Thacker struck Goodall and, at this point, Bollinger grabbed Thacker from behind to place him under arrest (Id.). Goodall and Bollinger assert that Thacker resisted Bollinger's attempt to arrest him (Id.). According to Thacker and Bollinger, Bollinger and Thacker fell to the ground and Thacker resisted the application of handcuffs (Id.). Finally, Thacker agreed, that if the officers permitted him to stand-up, he

-3-

would allow them to apply the handcuffs (Id.).  This was done (Id.).

Thacker's account of his arrest is, not suprisingly, slightly different.  Thacker avers that upon the arrival of Goodall and Bollinger the situation was under control; yet, he was arrested by these two officers without probable cause for disorderly conduct and assault on a police officer (doc. 1).  Thacker was handcuffed and he maintains was forced into the back of Bollinger's police cruiser with such force that a "chunk of [his arm's] flesh . . . was ripped off" (Id.).  This, asserts Thacker, resulted in permanent scarring (Id.).  Thacker remained in jail for approximately eight hours before he was released (Id.).  Charges were not filed against Thacker arising from his arrest on July 2, 2002.

Thacker maintains that prior to the incident occurring on July 2, 2002, Defendant, Lawrence County local government (hereinafter "Lawrence County"), including the Lawrence County Sheriff's Office (hereinafter "Sheriff's Office"), knew or should have known that officers in the Sheriff's Office engaged in a pattern of practice of misconduct by using excessive force when arresting citizens (Id.).  Despite this knowledge, Thacker maintains that Lawrence County and specifically the Sheriff's Office failed to properly investigate instances of police misconduct and failed to train, supervise, and discipline officers

-4-

of the Sheriff's Office (Id.). This failure to investigate, train, supervise, and discipline, argues Thacker, encouraged officers of the Sherrif's Office to engage in behavior that violated his constitutional rights (Id.). These violations resulted in Thacker suffering injuries and damages in violation of Section 1983 (Id.).

Those facts disputed by the Defendants in their Answer are as follows. Defendants deny that the situation was under control when Goodall and Bollinger arrived on the scene (Id.). They deny that Thacker was arrested without probable cause or reasonable justification (Id.). Defendants disavow that Thacker was shoved into the police cruiser with such force as to remove a "chunk" of flesh from his arm (Id.). Defendants also deny that Lawrence County or the Sheriff's Office had a policy of encouraging unconstitutional conduct on the part of officers employed by the Sheriff's Office (Id.).

**APPLICABLE LEGAL STANDARD**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378

(6th Cir.1993); <u>Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs</u>., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam).  In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Patton v. Bearden</u>, 8 F.3d 343, 346 (6th Cir.1993), <u>quoting</u> <u>in</u> <u>part</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled.  First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of  material fact[.]" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>see</u> <u>also</u> <u>LaPointe</u>, 8 F.3d at 378; <u>Guarino v. Brookfield Township Trustees</u>, 980 F.2d 399, 405 (6th Cir. 1992); <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th Cir. 1989).  The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case.  See <u>Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A</u>., 12 F.3d 1382, 1389 (6th Cir. 1993).

-6-

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir.1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir.1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page

numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F .2d 1155, 1162 (6th Cir.1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**ANALYSIS**

**A.  Thacker's Claims of Unlawful Seizure, Excessive Force, and Due Process Violations Against Officers Goodall and Bollinger**

Bollinger and Goodall claim they cannot be sued because they are entitled to qualified immunity (doc. 16). Qualified immunity is a long-standing doctrine that provides officials "immunity from [the indignities of] suit rather than a mere defense to liability." Saucier v. Katz, 533 U.S. 194, 200-201 (2001).  In sum, it protects officials from being held liable for violations of constitutional rights they did not know existed due to a lack of a previous pronouncement by a court recognizing the particular right in question.  Under Supreme Court precedent, determining whether a police officer is entitled to qualified immunity is a two-step process.  First, the Court must ascertain whether the officer's alleged conduct violated a constitutional right.  See Chavez v. Martinez, 538 U.S. 760, 766 (2003); Saucier, 533 U.S. at 201).  In other words, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201).  If it does not, then the inquiry is at an end: the officer is entitled to qualified immunity from suit. See Chavez, 538 U.S. at 766; Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity").  If, however, the complained-of conduct would

-9-

violate one or more of the plaintiff's constitutional rights, a second inquiry is required: The Court must ascertain whether the particular right allegedly violated was clearly established at the time the violation occurred. <u>Saucier</u>, 533 U.S. at 201). The Supreme Court has, however, circumscribed the scope of the review of this issue:

> This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable.
>
> [W]e emphasized in <u>Anderson</u> "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

<u>Saucier</u>, 533 U.S. at 201-202 (citations omitted); <u>see also</u> <u>Wilson v. Layne</u>, 526 U.S. 603, 615 (1999)("[A]s we explained in <u>Anderson</u>, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established"). The Supreme Court has recognized the doctrine of qualified immunity in Section 1983 cases. <u>Greene v. Reeves</u>, 80 F.3d 1101, 1104 (6th Cir. 1996).

Thacker claims that Bollinger and Goodall actions resulted in the "unreasonable seizure of . . . [his] person" (doc. 1). Defendants cite Hunter v. Bryant, 502 U.S. 224 (1991) for the proposition that Bollinger and Goodall are immune from suit for unreasonable seizure (false arrest) if a "reasonable officer could have believed [a plaintiff's arrest] to be lawful, in light of the clearly established law and the information . . . [that Bollinger and Goodall] possessed." Id. at 227 quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987). Hunter continues by stating, an officer is entitled to qualified immunity even where officers "reasonably but mistakenly conclude that probable cause is present." Id. Probable cause exists if "at the moment the arrest . . . [is] made . . . the facts and circumstances within . . . [the officers'] knowledge and of which they . . . [have] reasonably trustworthy information . . . [is] sufficient to warrant a prudent man in believing" that a crime has been committed. Id. at 228 (internal citations omitted).

Defendants maintain that Bollinger and Goodall "had more than reasonable belief that a crime had occurred because they were the witnesses to the crime" (doc. 16). Thacker was arrested for disorderly conduct (Id.). Defendants note that disorderly conduct, as found in the Ohio Revised Code, includes conduct such as that engaged in by Thacker - that being, cursing and yelling at Bollinger and Goodall. Ohio Rev. Code § 2917.11(A)(2) (disorderly

-11-

conduct includes, "[m]aking unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person . . ."). Defendants note that this is behavior that Thacker admits, in his deposition, he engaged in on the night of July 2, 2002 (doc. 16).

Defendants also note that Thacker's "disorderly conduct" occurred in the presence of Bollinger and Goodall (Id.). Since Thacker's conduct did occur in the presence of law enforcement officers, the offense committed by Thacker is a misdemeanor of the fourth degree. Ohio Rev. Code § 2917.11(E)(3)(c). Additionally, Defendants point out that Thacker's conduct continued despite requests by Goodall that he desist (Id.). Defendants also remind the Court that during all of this Thacker was carrying a loaded rifle (Id.). Defendants cite Ohio Revised Code section 2935.03(A)(1), which provides that an officer may arrest any person found violating any law of the state (doc. 16). As Defendants note, Bollinger and Goodall did not have a warrant to arrest Thacker; however, they did witness Thacker commit a crime in their presence (doc. 16). As such, Bollinger and Goodall contend they had authority to arrest Thacker and, in so doing, did not violate clearly established rights of Thacker (doc. 16).

Thacker maintains that Defendants have exaggerated and mischaracterized exactly what occurred the evening of July 2,

2002 (doc. 18).   Thacker argues that he did not admit in his
deposition that he "cursed Officer Goodall" (Id.).   Furthermore,
Thacker asserts that Bollinger and Goodall did not know for sure
whether the gun was loaded (Id.).   Thacker insists that Defendants
have resorted to "outright fabrications" in their Motion for
Summary Judgment (Id.).   As such, Thacker concludes that Bollinger
and Goodall did not have probable cause to arrest him for
disorderly conduct (Id.).

      Even if probable cause was present for his arrest,
Thacker avers that his seizure was still unreasonable (Id.).
Thacker notes that the reasonableness of a seizure depends not on
whether it was valid, but also on how it was carried out (Id.
citing Tennessee v. Garner, 471 U.S. 1, 7 (1985)).   Thacker points
to Goodall's "ripping" the rifle from his hands, the forced used by
Bollinger and Goodall in wrestling him to the ground, and the
injury caused by pushing him into the police cruiser as evidence
that the manner in which the arrest was completed was unreasonable
(Id.)

      Defendants next address Thacker's excessive force
claim (doc. 16).   As noted by Defendants, the Court in deciding
whether the forced used by Bollinger and Goodall was
unconstitutional must determine whether that use of force, under
the circumstances, violated the reasonableness standard of the
Fourth Amendment.  Graham v. Conner, 490 U.S. 386, 394 (1989).  The

-13-

Supreme Court in <u>Graham</u> further illuminated the analysis by stating:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake.  Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.  Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. . . . The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

<u>Graham</u> at 396 (<u>internal</u> <u>citations</u> <u>omitted</u>).

Defendants maintain that Bollinger and Goodall acted in an objectively reasonable manner and, as such, are entitled to qualified immunity (doc. 16).  Defendants latch on to the following deposition testimony of Thacker to support their assertion that Bollinger and Goodall acted in an objectively reasonable manner:

1. Thacker was carrying a loaded rifle at the scene of an ongoing fire;

2. Thacker was upset that evening and this agitated state was evidenced by his expression;

-14-

3. Following the removal of the rifle from Thacker's grasp by Goodall, Thacker began cursing at both Bollinger and Goodall;

4. Thacker's cursing continued despite a request by Goodall that it stop; and

5. Thacker's already agitated state increased.

(Id.). Defendants acknowledge that the evidence must be construed in Thacker's favor (Id.). Even so, argue Defendants, Bollinger and Goodall's use of force, in bringing Thacker to the ground, was reasonable under the circumstances as set forth above (Id.).

Defendants maintain that any cut to Thacker's arm received during his entry into Bollinger's police cruiser was caused accidentally (Id.). The officers' conduct, maintain Defendants, was reasonable under the circumstances (Id.). The Defendants conclude that since this conduct was reasonable, no violation of Thacker's Fourth Amendment rights could have occurred (Id.).

Thacker cites Graham as well for the standard to be used in determining whether the force in this case was reasonable (doc. 18). Thacker also notes that significant injury is not required nor is it required that marks of physical abuse be present to prove excessive force (Id. citing Holmes v. City of Massillon, 78 F.3d 1041, 1048 (6th Cir. 1996)). Thacker maintains that there

-15-

"was absolutely no reason" for Bollinger and Goodall to use any force under the circumstances (Id.).  Accordingly, Thacker concludes that Bollinger and Goodall violated his Fourth Amendment rights (Id.).

Defendants next assert that Thacker's deprivation of liberty without due process of law claim is spurious (doc. 16). Defendants argue that Thacker, as noted above, was arrested for disorderly conduct by officers who actually witnessed the behavior qualifying as disorderly conduct (Id.).  This, maintain the Defendants, is probable cause (Id.).  Additionally, the Defendants aver that Thacker's due process rights were not violated post-arrest (Id.).  Thacker bonded out of jail seven hours after arriving at jail; he never returned to police custody after leaving jail that night due to any events related to that evening; and he was permitted to post bond to obtain release (Id.).  This, contend Defendants, was the due process owed to Thacker (Id.).  Thus, Defendants conclude that Thacker's due process rights were not violated pre-arrest, during arrest, or post-arrest (Id.). Consequently, Defendants argue, Bollinger and Goodall are entitled to qualified immunity (Id.).

Thacker cites Brandenburg v. Cureton, 882 F.2d 211, 216 for the proposition that a court should not consider the defense of qualified immunity where "the question of immunity is dependent upon which view of the facts is accepted by the jury."

-16-

Id. at 216.  However, the Court is not convinced that the Parties' factual disputes are material in nature.  A motion for summary judgment, as noted earlier in the Court's Order, is not defeated unless there is "evidence on which the jury could reasonably find for the [non-movant]."  Anderson at 252; Gregory at 784.  Furthermore, as noted earlier, Thacker must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts."  Phillip Morris at 339-40; Celotex at 324; Guarino at 405.  Thacker's version of the facts is not materially different from those expressed by the Defendants.

It is not disputed that Thacker was in possession of a shot-gun at the scene of a fire when Goodall and Bollinger arrived.  It is also not disputed that Thacker was agitated about the number of fires he had experienced over the past several months.  This agitated state was evident.  It is not in dispute that Thacker cursed at the officers.

Thacker's behavior meets the definition of disorderly conduct as espoused in the Ohio Revised Code.  Furthermore, the conduct was carried out in the presence of Goodall and Bollinger.  The Court finds that Goodall and Bollinger had probable cause to arrest Thacker.  At the time of the arrest, Goodall and Bollinger were in possession of the knowledge of "facts and circumstances" which were "reasonably trustworthy" and

ultimately "sufficient to warrant a prudent man in believing" that a crime had been committed.  In fact, as noted above, the crime committed by Thacker was done so in the presence of Goodall and Bollinger.  A more trustworthy and sufficient set of facts and circumstances could not be produced.

Additionally, the Court finds that after balancing "the nature and quality of the intrusion" of Thacker's Fourth Amendment interests "against the countervailing governmental interests at stake" one can only conclude that Goodall and Bollinger's use of force was reasonable.  Defendants have highlighted deposition testimony of Thacker (<u>supra</u> at 14-15) that supports the conclusion that the force used was reasonable.  These five highlighted facts excerpted from Thacker's deposition testimony are not materially disputed by Thacker.  The interest of the government, here Lawrence County, in subduing an agitated individual with a shotgun who was cursing at police officers outweighs the intrusion of Thacker's Fourth Amendment interest.  Considering this set of circumstances, the Court finds that a "sufficient disagreement" as it relates to the evidence is not present.  Therefore, a determination that the force used was reasonable does not "require submission to a jury."

Goodall and Bollinger had sufficient probable cause to arrest Thacker for disorderly conduct.  Furthermore, Goodall and Bollinger's use of force was reasonable under the circumstances.

-18-

The Court also finds that Thacker does not demonstrate that he was deprived of his liberty without due process of law. Consequently, the Court determines that Goodall and Bollinger's conduct did not violate a constitutional right of Thacker's. As such, the officers are entitled to qualified immunity. Accordingly, Thacker's claims against Goodall and Bollinger for (1) unreasonable seizure, (2) excessive force, and (3) violations of due process are dismissed.

**B.  Thacker's Section 1983 Claim Against Lawrence County**

According to Defendants, Thacker is no longer asserting a claim against Lawrence County ("[w]hile the Plaintiff's Complaint contains claims against both Officers Goodall and Bollinger in their official capacities the Plaintiff's attorney has given notice that the Plaintiff now only intends on pursuing individual capacity claims against Officers Goodall and Bollinger") (doc. 16). Defendants, however, address this issue as Thacker's Complaint still states claims against Lawrence County (Id.). The Court does note that Thacker's Memorandum in Opposition to Defendants' Motion for Summary Judgment indicates that the only federal claims asserted are those against Goodall and Bollinger in their individual capacities (doc. 18). Furthermore, Thacker does not respond in its Opposition Memorandum in any way to Defendants' arguments concerning Lawrence County's liability as pronounced in its Summary Judgment Motion (Id.). Despite Thacker's admission to

-19-

Defendants that he no longer is pursuing federal claims against Lawrence County and despite Thacker's non-response to Defendants' Section 1983 municipal liability arguments, the Court will still address this issue.

As the Court previously discussed, a summary judgment motion cannot be defeated by mere conclusory allegations. See Union Camp Corp. at 1162 (6th Cir.1990). Thacker makes no allegations in his Memorandum Opposition that Lawrence County violated Section 1983 (doc. 18). Furthermore, the allegations made in Thacker's Complaint are nothing more than conclusory. Thus, there is not "sufficient disagreement [as regards the evidence] to require submission to a jury" as it relates to Thacker's claim that Lawrence County violated Section 1983.

**C.  Thacker's State Law Claims**

All that remains are the state law claims, the Court having disposed of all of Plaintiff's federal law claims. Although 28 U.S.C. §1367 conclusively vests this Court with supplemental jurisdiction over all state law claims that "form part of the same case or controversy," it also empowers district courts to decline to exercise such jurisdiction when all such federal law claims are dismissed prior to trial. See 28 U.S.C. §1367(c). Indeed, the U.S. Supreme Court has held that dismissal of the state-law claims should be the general rule in such circumstances, and the Sixth Circuit has repeatedly emphasized this approach. See United Mine

-20-

Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); Brandenburg v. Housing Auth. of Irvine, 253 F.3d 891, 900 (6th Cir.2001)("In fact, the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment."); Landefeld v. Marion General Hosp., Inc., 994 F.2d 1178, 1182 (6th Cir. 1993).  As no compelling facts support this Court's continued jurisdiction of Thacker's remaining state-law claims, all will be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (doc. 16) is GRANTED.

SO ORDERED.

Dated: April 19, 2005          /s/ S. Arthur Spiegel

                               S. Arthur Spiegel
                               United States Senior District Judge

-21-